<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

May 5, 2023

Jeffrey Burd
Register No. 15020-050
Fort Dix Federal Correctional Institution
P.O. Box 2000
Joint Base MDL, NJ 08640
*Pro se Defendant*

Jennifer S. Kozar
Office of the United States Attorney
970 Broad Street
Newark, NJ 07102
*Counsel for the United States of America*

<u>**LETTER OPINION FILED WITH THE CLERK OF THE COURT**</u>

**Re:**   *United States v. Jeffrey Burd*
          **Criminal Action No. 21-86 (SDW)**

Litigants:

Before this Court is *pro se* Defendant Jeffrey Burd's ("Defendant") Motion for Compassionate Release ("Motion") under the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A). (D.E. 28, 29.) This Court having considered the parties' submissions, and for the reasons discussed below, denies Defendant's Motion.

**<u>DISCUSSION</u>**

A.

Although a district court generally has limited authority to modify a federally imposed sentence once it commences, *see United States v. Epstein*, Crim. No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020); *Dillon v. United States*, 560 U.S. 817, 825 (2010), the FSA permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence. 18 U.S.C. § 3582(c)(1)(A). The statute provides, in relevant part, that:

> (A) [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id.* Accordingly, under the FSA, "a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *Epstein*, 2020 WL 1808616, at *2 (citing 18 U.S.C. § 3582(c)(1)(A)).

The prerequisites for judicial review are straightforward. First, a defendant seeking a reduced sentence must ask the Bureau of Prisons ("BOP") to file a motion for a reduced sentence on his behalf. Then, the defendant must either "(i) wait thirty days for the BOP to respond or (ii) exhaust all available administrative appeals after receiving an adverse decision [from the BOP]." *United States v. McDonald*, Crim. No. 09-656, 2020 WL 3638280, at *3 (D.N.J. July 2, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

Once a defendant has satisfied those prerequisites, a court may reduce a defendant's sentence "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission,[1] and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020) (quoting *United States v. Pabon*, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020)).

B.

---

[1] Although the Sentencing Commission's policy statement is not binding on this Court, "it still sheds light on the meaning of extraordinary and compelling reasons." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). The Sentencing Commission's relevant policy statement identifies medical conditions which meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health due to aging, that substantially diminishes the ability of the defendant to provide self-care within a correctional facility and from which they are not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A).

On January 28, 2021, the government charged Defendant with one count of wire fraud in violation of 18 U.S.C. § 1343. (D.E. 1.) On the same date, Defendant pleaded guilty to that offense. (D.E. 5, 19.) In the plea agreement, the parties stipulated to a sentence of three years of probation—for two of those years, Mr. Burd was to be confined to his home and subjected to electronic monitoring. (D.E. 5 at 1–2.) The parties acknowledged that their stipulations "cannot and d[id] not bind the sentencing judge." (*Id.* at 4.) On June 8, 2021, the Court rejected the parties' stipulated sentence and imposed upon Defendant a 27-month custodial sentence.[2] (D.E. 20 at 14:15–25:18.) On appeal, Defendant challenged the procedural and substantive reasonableness of his sentence. (D.E. 27.) The Third Circuit, however, affirmed the ruling of this Court. (*Id.*)

Defendant's surrender date was set for July 27, 2021. (D.E. 21.) After a series of requests to delay his surrender date,[3] Defendant eventually entered custody on December 31, 2021. Approximately one month later, Defendant submitted a request for compassionate release to the warden at the Federal Correctional Institute in Fort Dix, New Jersey ("FCI Fort Dix"). (D.E. 29-2 at 2.) In his request to the warden, Defendant highlighted several reasons that purportedly justified his release: the severity of his health conditions, his minimum recidivism risk assessment score, the non-violent nature of his crime, and his role as sole caregiver for his wife. (*Id.* at 6–7.) On June 28, 2022, Defendant filed the instant Motion. (D.E. 28, 29.) On August 22, 2022, the Government filed a brief in opposition to Defendant's Motion. (D.E. 31.)

### C.

Defendant raises several arguments in support of the instant Motion. (D.E. 29.) Because Defendant failed to raise multiple issues with the BOP, he has not exhausted all administrative remedies as to those unraised issues. Nonetheless, this Court considers each of Defendant's arguments in turn and finds each unpersuasive.

### 1. Procedural Prerequisite

The first consideration is whether Defendant has exhausted his administrative remedies by presenting to the BOP the extraordinary and compelling reasons that support his compassionate release. *See Epstein*, 2020 WL 1808616, at *2. Courts in this District are split as to whether so-called "issue exhaustion" applies to motions under the First Step Act. Some courts have required issue exhaustion, explaining that "[p]ermitting inmates to bypass that requirement by presenting one reason for relief to the BOP and another to the Court would create an end-run around the exhaustion requirement and deprive the BOP of the opportunity to consider the request." *United States v. McNair*, 481 F. Supp. 3d 362, 368 (D.N.J. 2020) (citing *United States v. Alderson*, Crim.

---

[2] Defendant's total offense level of 16 and criminal history category of III informed the guideline imprisonment range of 27 to 33 months. (D.E. 20 at 11:23–12:12.)

[3] This Court granted two such requests. In July 2021, Defendant sought an extension of his surrender date to care for his wife and to undergo surgery on his right thumb. (D.E. 21.) This Court adjourned Defendant's surrender date from July 27, 2021, to September 27, 2021. (D.E. 22.) On September 21, 2021, Defendant sought another extension, so that he could undergo surgery on his left hand and coordinate care for his wife while he served his custodial sentence. (D.E. 23.) This Court again extended Defendant's surrender date—to December 31, 2021—but indicated that it would grant no further extensions. (D.E. 24.) Defendant, nonetheless, requested a third extension on December 16, 2021, because he was concerned that the BOP could not care for his spine and neck pain arising from a 2016 car accident. (D.E. 25.) That request was denied. (D.E. 26.)

No. 18-20348, 2020 WL 4696599, at *2 (E.D. Mich. Aug. 13, 2020)).  Other courts have flatly rejected any such requirement.  *See, e.g.*, *United States v. Herrera-Genao*, Crim. No. 07-454, 2021 WL 2451820, at *3–4 (D.N.J. June 16, 2021), *rev'd on other grounds*, No. 21-2345, 2023 WL 2755577 (3d Cir. Apr. 3, 2023).  Indeed, this Court has previously excused issue exhaustion where the COVID-19 pandemic arose after a defendant's 2016 and 2019 requests for compassionate release.  *McDonald*, 2020 WL 3638280, at *3.

Here, on February 11, 2022, Defendant submitted an administrative request for compassionate release to the warden at FCI Fort Dix.[4]  (D.E. 29-2 at 2.)  In his request to the warden, however, Defendant did not identify a slew of issues that he now raises before this Court—specifically, his concerns about age, the BOP's alleged neglect of his medical conditions, the lack of rehabilitative programming at FCI Fort Dix, and the conditions at FCI Fort Dix.  Defendant's failure to raise these issues with the BOP before filing the instant Motion is exactly the type of "end-run around the exhaustion requirement" to which then-Chief Judge Wolfson was referring.  *McNair*, 481 F. Supp. 3d at 368.  Consequently, this Court denies the portion of Defendant's Motion that he did not raise with the BOP.  (D.E. 29-2 at 2.)

Even if this Court were to consider the issues for which Defendant did not exhaust his administrative remedies, Defendant still has failed to carry his burden of demonstrating extraordinary and compelling reasons for compassionate release.

### 2. Defendant's Medical Conditions

Defendant asserts that his medical conditions and the BOP's refusal to provide adequate treatment thereof are each extraordinary and compelling reasons justifying his release.  (D.E. 29 at 3–7.)  For several reasons, Defendant's claimed medical issues do not suffice.

First, while this Court is certainly sympathetic to Defendant's medical conditions, it knew of and considered each of the foregoing medical conditions at the time of Defendant's sentencing.[5]  *See United States v. Boyce*, Crim. No. 07-1018, 2022 WL 2116768, at *3 (D.N.J. June 13, 2022) (collecting cases and denying compassionate release where the defendant "ha[d] not sufficiently shown how his conditions [we]re exacerbated by COVID-19 or how they present[ed] materially different circumstances than those the Court considered when it sentenced him").  Defendant has not shown that his health conditions are materially different from those the Court considered at sentencing.

Second, even if this Court were to consider Defendant's previously raised medical conditions, they are not sufficiently severe to establish a basis for release.  To be sure, decisions

---

[4] Defendant cited "serious health conditions which elevate [his] risks for reinfection to the COVID-19 virus" such as high blood pressure, high cholesterol, obesity, heart murmur, "long-COVID" symptoms, and kidney disease.  It is unclear whether the warden formally denied Defendant's request, but it is undisputed that 30 days have since lapsed. (D.E. 29-2 at 9; D.E. 31 at 6.)

[5] Specifically, Defendant suffers from back, neck, spine, knee and wrist pain, hypertension, chronic asthma, and chronic GERD.  (*See* D.E. 28-1, 28-2, 32-2.)  And Defendant committed the crimes for which he is presently incarcerated while managing these conditions.  (D.E. 20 at 14:15–21:4.)

in this District have denied compassionate release to inmates suffering from medical issues like and worse than those raised by Defendant. *Id.* (denying compassionate release to a blind, wheelchair-bound defendant who suffered from paranoid delusions and hypertension); *United States v. Alexander*, Crim. No. 19-32, 2020 WL 2507778, at *4 (D.N.J. May 15, 2020) (denying compassionate release to a defendant who suffered from obesity and hypertension where medical records showed that the BOP was "adequately managing [his] medical care"); *McDonald*, 2020 WL 3638280, at *1 (denying compassionate release where defendant suffered from hypertension, vulnerability to strokes, heart disease, a history of lung cancer, vision and hearing loss, a loss of mobility, and a thoracic aortic aneurism).

Third, Defendant's medical conditions have not "substantially diminishe[d]" his ability "to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13, cmt. n.1(A). Although Defendant experiences some discomfort and dizziness, he has stated to doctors that he administers his own medication and can walk up and down stairs, get in and out of bed, and shower himself. (D.E. 32-2 at 3.) Moreover, Defendant has neither shown that BOP medical staff have neglected his medical conditions nor that they have been unable to provide him with adequate care. Indeed, since arriving at FCI Fort Dix, Defendant has met several times with medical staff, and received x-rays, an optometry exam, bloodwork, and CT scans of his pelvis and abdomen. (D.E. 28-1 at 4–20; D.E. 32-2.) BOP medical staff are aware of Defendant's conditions and are treating them through prescription medication, counseling, evaluations, and imaging. (D.E. 28-1 at 4–20; D.E. 32-2.)

Fourth, Defendant's argument that compassionate release is warranted because he requires surgery on his left hand is unavailing. This Court granted Defendant's second request for an extension of his surrender date based on Defendant's specific need to receive surgery on his left hand. (D.E. 23, 24.) BOP's records indicate that Defendant failed to undergo this surgery. (*See generally* D.E. 32-2.) Defendant cannot now claim, without evidence, that his left-hand surgery—which he voluntary chose to forgo—amounts to an extraordinary and compelling circumstance justifying early release.

Fifth, Defendant's concerns about his susceptibility to COVID-19 do not amount to an extraordinary and compelling reason for release. Although the CDC has identified hypertension, obesity, and asthma as risk factors for COVID-19,[6] Defendant has been vaccinated and boosted against COVID-19 and has already contracted and recovered from the virus. (D.E. 32-2 at 36–37.) Several decisions in this District support that such circumstances diminish the risks to defendants. *United States v. Allen*, Crim. No. 18-216, 2023 WL 314351, at *6 (D.N.J. Jan. 19, 2023) (denying compassionate release to a defendant by reasoning that his vaccination greatly reduced the likelihood of serious consequences from a COVID-19 infection); *United States v. Toney*, Crim. No. 83-17, 2021 WL 1382154, at *2 (D.N.J. Apr. 12, 2021) (denying compassionate release to defendant in part because he had already contracted and recovered from COVID-19). Accordingly, Defendant's fears about his vulnerability to COVID-19 do not qualify as an extraordinary and compelling reason for release.

---

[6] The list of risk factors appears at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

### 3. Defendant's Age

Defendant's age similarly does not establish an extraordinary and compelling basis for release. (*See* D.E. 10 at 3; D.E. 28.) As an initial matter, Defendant is only 62 years old, (D.E. 28-1 at 4), and the policy statement of the Sentencing Commission promulgates that to consider age as an extraordinary and compelling reason, the defendant should be at least 65 years old. U.S.S.G. §1B1.13, cmt. n.1(B). To be sure, Courts in this District have denied motions for compassionate release to inmates close in age to or older than Defendant. *United States v. Tull*, Crim. No. 15-622, 2020 WL 6381250, at *2–3 (D.N.J. Oct. 30, 2020) (denying motion for compassionate release where defendant was 75-years old and suffered from asthma, cerebrovascular disease, hypertension, vertigo, and degenerative disk condition); *United States v. Falci*, Crim. No. 17-228, 2020 WL 3410914, at *4–5 (D.N.J. June 22, 2020) (denying defendant's motion for compassionate even though the defendant was 60 years old and suffered from obesity and hypertension).

In any event, Defendant's age was known and considered by this Court at the time of sentencing, (D.E. 20 at 14:15–21:4), which "necessarily render his claims meritless." *Chu v. Hollingsworth*, Civ. No. 14-4598, 2014 WL 3730651, at *4 (D.N.J. July 28, 2014). Consequently, Defendant's age is not an extraordinary and compelling reason for compassionate release.

### 4. Prison Conditions at FCI Fort Dix

Because Defendant fails to show any specific harm to himself, his general reference to lawsuits and media pieces discussing issues at FCI Fort Dix[7] do not warrant compassionate release. *See United States v. Watson*, Crim. No. 19-734, 2021 WL 2201687, at *4 (D.N.J. May 28, 2021) (denying motion for compassionate release where the defendant relied on general concerns and "fail[ed] to point to any specific conditions that ma[de] him vulnerable").

First, Defendant has provided no evidence to support his descriptions of the treatment of COVID-positive inmates. (D.E. 29 at 7–8.) As several courts in this District have noted, the BOP has followed a detailed "action plan" to combat the COVID-19 pandemic.[8] *See, e.g.*, *United States v. Roberson*, Crim. No. 19-362, 2022 WL 17340684, at *2–3 (D.N.J. Nov. 30, 2022); *United States v. King*, Crim. No. 18-379, 2021 WL 3783157, at *2 (D.N.J. Aug. 24, 2021). Moreover, Defendant's mentioning of a class-action lawsuit against the BOP for its improper response to the pandemic, (D.E. 29 at 7–8), is irrelevant as there is no showing of specific harm to him. *See Raia*, 954 F.3d at 597 (explaining that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release").

Second, Defendant's allegation that the water at FCI Fort Dix is contaminated is not substantiated with any evidence. Defendant's reference to a pending mass-tort litigation filed in

---

[7] Specifically, Defendant asserts that the handling of the COVID-19 pandemic at FCI Fort Dix, the alleged toxic chemicals in the water at the prison, and the lack of rehabilitative programming are extraordinary and compelling reasons for release. (D.E. 29 at 7–9.)

[8] The BOP's "action plan" can be found at https://www.bop.gov/coronavirus/.

2018, (D.E. 29 at 8, 16), is of no matter as there is once again no showing of specific harm to Defendant. *See Watson*, 2021 WL 2201687, at *4.

Third, there is no evidence to support Defendant's allegations regarding the lack of rehabilitative programming at FCI Fort Dix, and Defendant fails to show how the alleged lack of programming personally affects him. *See id.* To the contrary, there are numerous structured, curriculum-based productive activities available to Defendant at FCI Fort Dix. (D.E. 32-2 at 12–21.) For the foregoing reasons, Defendant's general grievances regarding the prison conditions at FCI Fort Dix fail to rise to the level of an extraordinary and compelling reason for release.

### 5. Defendant's Family Circumstances

The policy statement of the Sentencing Commission states that family circumstances that constitute extraordinary or compelling reasons for release include "the death or incapacitation of the caregiver of the defendant's . . . child" or "the incapacitation of the defendant's spouse . . . when the defendant would be the only available caregiver." U.S.S.G. §1B1.13, cmt. n.1(C). Defendant's wife submitted an "Affidavit of Truth," in which she claims that she is being treated for early-onset Alzheimer's and that she suffers from osteoporosis, bronchiectasis, fibromyalgia, migraines, and high blood pressure. (D.E. 29-2 at 4.) Defendant asserts that his wife's medical conditions render her incapacitated, and that he is his wife's sole caregiver. (D.E. 29 at 12, 19.) Defendant has not adequately shown either.

While the Court sympathizes with Defendant's family circumstances, Defendant fails to provide credible evidence to verify his wife's claims. Indeed, the only supporting documentation for her condition is the statement from Defendant's wife herself. (D.E. 29-2 at 4.) Where, as here, a defendant "present[s] no medical documentation or other competent evidence demonstrating that his wife is incapacitated," courts will deny a request for compassionate release. *United States v. Doolittle*, Crim. No. 19-501, 2020 WL 4188160, at *3 (D.N.J. July 21, 2020).

Further, Defendant's own submissions to this Court contradict his claims that his wife is incapacitated and that he is his wife's sole caregiver. To determine what constitutes "'incapacitation,' courts have looked to the BOP guidelines for handling inmate requests for compassionate release based on the incapacitation of a spouse." *Id.* (citing *United States v. Collins*, Crim. No. 15-10188, 2020 WL 136859, at *4 (D. Kan. Jan. 13, 2020)). The BOP guidelines define incapacitation as "a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse . . . is completely disabled, meaning that the spouse . . . cannot carry on any self-care and is totally confined to a bed or chair." *Id.* (quoting *Collins*, 2020 WL 136859, at *4).

Here, Defendant has indicated that his wife still works as a "teacher's assistant," drives in a limited capacity, and performs self-care tasks. (*See generally* D.E. 28.) Thus, Defendant's submission undercuts his claim that his wife is incapacitated for purposes of compassionate release. *Doolittle*, 2020 WL 4188160, at *4 (quoting *Collins*, 2020 WL 136859, at *4). Even if Defendant had shown that his wife's medical conditions rendered her completely disabled, Defendant has stated that his three children as well as several friends of the family have tried to "chip in where they can" in caring for his wife and that his children are doing all they can to help

their mother. (D.E. 28 at 1; D.E. 29 at 19.) Evidently, Defendant is not the sole caregiver for his wife.

### 6. 18 U.S.C. § 3553(a) Sentencing Factors

Finally, even if this Court were to find that Defendant exhausted his administrative remedies and sufficiently showed extraordinary and compelling reasons for his release, it would still deny his Motion because the applicable sentencing factors under 18 U.S.C. § 3553(a) weigh against his release. *See United States v. Horvath*, Crim. No. 15-0400, 2020 WL 7074379 at *1, *3–4 (D.N.J. Dec. 3, 2020) (concluding that while defendant's hypertension and other health issues constituted an "extraordinary and compelling" reason for release, the sentencing factors weighed against compassionate release). Here, Defendant has a history of recidivism, including prior convictions for theft and money laundering,[9] and Defendant began the instant fraud just 6 months after completing a term of supervised release for a similar offense. (D.E. 10 ¶¶ 14–15.) Indeed, Defendant conducted the instant fraud scheme while experiencing medical conditions similar to those for which he now seeks compassionate release. (*Id.* ¶¶ 67–75; D.E. 32). Thus, a reduced sentence here would not "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," or "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2). This Court will therefore deny Defendant's Motion.

### **CONCLUSION**

For the foregoing reasons, Defendant's motions are **DENIED**. An appropriate order follows.

                                              /s/ Susan D. Wigenton
                                        **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties

---

[9] Between January 1988 and August 1992, Defendant defrauded victim investors out of more than $15,000,000 by falsely representing that investing in his sports and entertainment venture would earn them a massive profit. (*See* D.E. 10 ¶ 49.) Instead, Defendant used substantial amounts of the money for personal expenditures such as gambling and purchasing luxury items. (*Id.*)